# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**GUY L. YOUNGBLOOD,**

     **Plaintiff,**

     **v.**

     **Case No. 2:17-CV-02180-JAR-GEB**

**REX QUALLS,**

     **Defendant.**

## AMENDED MEMORANDUM & ORDER

Plaintiff Guy Youngblood brings this action against Defendant Rex Qualls, a former police officer for the City of Baxter Springs, Kansas, in his personal capacity only, seeking monetary damages pursuant to 42 U.S.C. § 1983 and the Kansas Tort Claims Act, K.S.A. § 75-6101, *et seq.*, for Defendant's alleged violation of Plaintiff's First, Fourth, and Fourteenth Amendment rights, as well as his rights under Articles 11 and 15 of the Kansas Bill of Rights. Plaintiff contends that this Court has supplemental jurisdiction to hear his state-law claims pursuant to 28 U.S.C. § 1367(b). Before the Court are two motions—Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 4) and Plaintiff's Motion to Amend Complaint (Doc. 12). Having considered the parties' briefing, the Court is prepared to rule. For the reasons set forth below, Defendant's Motion to Dismiss is granted in part and denied in part, and Plaintiff's Motion to Amend is denied as futile.[1]

---

[1] This Order is being issued to correct an erroneous statement of law concerning the notice requirement of K.S.A. § 12-105b(d) in Section III.C. of the Court's prior Memorandum and Order dated December 1, 2017 (Doc. 15). This Order is not otherwise materially different from the Court's prior order and does not alter the Court's prior rulings on Defendant's Motion to Dismiss or Plaintiff's Motion to Amend.

I.        **Factual and Procedural Background**

Plaintiff Guy Youngblood alleges that on July 1, 2015, he was mowing his front lawn when he was approached by Defendant Rex Qualls, who was then a police officer employed by the City of Baxter Springs, Kansas. Plaintiff contends that Defendant's presence at his home was instigated by animosity between Plaintiff and Randall Trease, the mayor of Baxter Springs, who lives across the street from Plaintiff. Plaintiff alleges that Defendant informed him that he was violating a municipal ordinance by discharging grass clippings into the street. Plaintiff states that in response to this comment, he turned toward the mayor's residence and, "while in the . . . close proximity of Defendant Qualls . . . . raise[d] his right arm, extend[ed] the middle finger of his right hand and state[d] in a loud voice, 'F*** that mother*****.'"[2] Plaintiff alleges that Defendant then "with no warning to Plaintiff, forcefully grasped Plaintiff and threw him onto the street,"[3] causing injuries to Plaintiff. Plaintiff states that Defendant then arrested him for disorderly conduct and transported him to the Cherokee County Jail, where he was held prior to posting bond and being released.

Plaintiff filed this action on March 29, 2017. His Complaint alleges four causes of action against Defendant in his personal capacity: (1) unreasonable seizure in violation of rights guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution; (2) unreasonable interference with and retaliation for protected speech and conduct in violation of the First and Fourteenth Amendments; (3) unreasonable seizure in violation of rights guaranteed under Section 15 of the Kansas Bill of Rights; and (4) unjustified interference with and

---

[2] Doc. 2 ¶ 11.

[3] *Id.* ¶ 12.

retaliation for Plaintiff's right to free speech under Section 11 of the Kansas Bill of Rights.[4]
Plaintiff alleges that his federal claims arise under 42 U.S.C. § 1983, that his state-law claims
arise under the Kansas Bill of Rights and the Kansas Tort Claims Act ("KTCA"), and that this
Court has supplemental jurisdiction to hear his state-law claims pursuant to 28 U.S.C. § 1367.[5]

## II.    Legal Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must
contain factual allegations that, assumed to be true, "raise a right to relief above the speculative
level" and must include "enough facts to state a claim for relief that is plausible on its face."[6]
Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a
reasonable likelihood of mustering factual support for *these* claims."[7]  The plausibility standard
does not require a showing of probability that "a defendant has acted unlawfully," but requires
more than "a sheer possibility."[8]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of
the elements of a cause of action' will not suffice; a plaintiff must offer specific factual
allegations to support each claim."[9]  Finally, the court must accept the nonmoving party's factual
allegations as true and may not dismiss on the ground that it appears unlikely the allegations can
be proven.[10]

---

[4] *Id*. ¶¶ 17–20.

[5] *Id*. ¶¶ 2–3.

[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[7] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[10] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[11]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[12]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[13]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14]

Plaintiff in this case filed a motion to amend his Complaint pursuant to Fed. R. Civ. P. 15(a)(2) after Defendant had moved to dismiss under Rule 12(b)(6).  Plaintiff seeks to amend his Complaint to "allege service of notice of claim on the City of Baxter Springs, Kansas under K.S.A. 12-105b."[15]  Although Fed. R. Civ. P. 15 requires that leave to amend "be freely given when justice so requires," whether leave should be granted is within the trial court's discretion.[16] The factors the Court should consider in determining whether to allow amendment of a pleading are undue delay, bad faith or dilatory motive, failure to cure deficiencies by amendments

---

[11] *Id.* (citing *Twombly*, 550 U.S. at 555).

[12] *Id.* at 678–679.

[13] *Id.* at 679.

[14] *Id.* at 678.

[15] Doc. 12 at 1.

[16] *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992)).

previously allowed, undue prejudice to the opposing party, or futility of the amendment.[17]  To justify denying leave to amend on the basis of futility, the proposed amendment must be clearly futile.  "If a proposed amendment is not clearly futile, then denial of leave to amend is improper."[18]  The court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or otherwise fails to state a claim upon which relief may be granted.[19]

Finally, Plaintiff contends that pursuant to 28 U.S.C. § 1367, the Court should exercise supplemental jurisdiction to hear his state-law claims in addition to his federal claims arising under 42 U.S.C. § 1983 and 28 U.SC. § 1331.  "'[F]ederal courts have no jurisdiction without statutory authorization.'"[20]  However, § 1367(a) provides that:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . .

Thus, district courts having original jurisdiction to hear federal claims also have discretion to exercise supplemental jurisdiction over state-law claims where the plaintiff can demonstrate that "the claims not within the original jurisdiction of the court form part of the same 'case or

---

[17] *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Castleglen*, 984 F.2d at 1585.

[18] 6 Charles Alan Wright, et al., Federal Practice & Procedures § 1487 (3d ed. 2017).

[19] *Ketchum*, 961 F.2d at 920; *Schepp v. Fremont Cty.*, 900 F.2d 1448, 1451 (10th Cir. 1990).

[20] *Davis v. King*, 560 F. App'x 756, 759 (10th Cir. 2014) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)).

controversy under Article III' as [his] federal claims."[21]   Federal and state claims arise from the same "case or controversy" where the "state and federal claims . . . derive from a common nucleus of operative fact . . . ."[22]

## III.   Analysis

On May 9, 2017, Defendant moved to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(6), asserting that Plaintiff's Complaint fails to state a claim in several respects.   Defendant first argues that Plaintiff's Complaint does not comply with Fed. R. Civ. P. 8(a)—which requires a short and plain statement of the claim showing that the pleader is entitled to relief—such that Defendant cannot determine what types of claims Plaintiff is asserting against him.   Defendant contends that Plaintiff's Complaint is internally inconsistent, alleging different types of claims in the "Nature of Action and Jurisdiction" section compared with the "Causes of Action" section.   Specifically, Defendant notes that Plaintiff alleges that his arrest by Defendant was accomplished through the use of "excessive and unreasonable force" in the early paragraphs of the Complaint, but makes no claim for excessive use of force in the paragraphs that make up the "Causes of Action" portion of the Complaint.   Defendant also argues that Plaintiff alleges no state-law tort claims under the Kansas Tort Claims Act in the "Causes of Action" section of his Complaint, but merely refers to the Kansas Bill of Rights as the source of his state-law claims.   Defendant contends that these pleading inconsistencies result in a Complaint that "fails to give notice to Defendant Qualls what claims are being raised,"[23] and that this action must therefore be dismissed.

---

[21] *Oltremari by McDaniel v. Kan. Soc. & Rehab. Servs.*, 871 F. Supp. 1331, 1340 (D. Kan. 1994) (quoting *Fasco Indus., Inc. v. Mack*, 843 F. Supp. 1252, 1256 (N.D. Ill. 1994)).

[22] *Id*. at 1340 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

[23] Doc. 5 at 4.

Defendant also argues that Plaintiff's claims against him must be dismissed because Defendant is entitled to qualified immunity, the Kansas Bill of Rights does not create a private right of action, and Plaintiff failed to comply with the KTCA's notice requirement, K.S.A. § 12-105b(d), prior to bringing suit for state-law tort claims.  In his Response to Defendant's motion to dismiss, Plaintiff contends that qualified immunity is not available here, that he has cognizable claims under the Kansas Constitution, and that because Defendant's municipal employer is not a named defendant, the notice requirements of K.S.A. § 12-105b do not apply and he was not required to give notice to Defendant prior to filing suit.  In his Motion to Amend, Plaintiff seeks leave to amend his Complaint to allege that he did, in fact, serve notice of his claim on the City of Baxter Springs on or about January 28, 2016.  Defendant opposes Plaintiff's Motion to Amend on the basis that it would be futile because the Complaint, as amended, would still be subject to dismissal.

### A.    Federal Claims

Section 1983 provides a cause of action for the deprivation of federal rights by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . ."[24]  Although the Court agrees with Defendant that Plaintiff's Complaint could be more clearly and logically structured, the Court cannot find that Plaintiff's allegations fail to give Defendant notice of the federal claims asserted against him pursuant to § 1983.  Rule 8(a) requires that Plaintiff provide a "short and plain statement of the claim showing that [he] is entitled to relief."  To survive a motion to dismiss under Rule 12(b)(6), Plaintiff must "frame [his] 'complaint with enough factual matter (taken as true) to suggest' that he . . . is entitled to

---

[24] 42 U.S.C. § 1983.

relief."[25]  Plaintiff alleges that he shouted an obscenity directed toward his neighbor's house while in close proximity to Defendant, and that in response, Defendant "forcefully grasped Plaintiff and threw him onto the street."[26]  Plaintiff alleges that Defendant's conduct caused Plaintiff to suffer physical injuries, and that Defendant arrested him and transported him to the Cherokee County Jail.[27]  These allegations are set forth in "Facts" section of Plaintiff's Complaint and provide factual support for Plaintiff's allegations in the "Nature of Action and Jurisdiction" section that Defendant violated his constitutional rights through "wrongful seizure and excessive use of force."[28]  While it is true that Plaintiff asserts no separately delineated claim for "excessive use of force" in the "Causes of Action" section of his Complaint, it is plain to the Court that Plaintiff is alleging that his seizure by Defendant was "unreasonable" due to both lack of constitutional justification and the amount of force used under the circumstances.[29]  The Court finds that Plaintiff has satisfied Rule 8(a) with respect to his claims arising under § 1983.

Having found that Plaintiff's allegations concerning his federal claims satisfy Rule 8(a), the Court must now consider whether Defendant is entitled to qualified immunity from those claims.  Allowing a plaintiff to seek damages under § 1983 in an individual-capacity suit against the offending party is a vital tool for vindicating cherished federal rights.[30]  In certain circumstances, however, the individual offending party is entitled to qualified immunity from

---

[25] *Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

[26] Doc. 2 ¶¶ 11–12.

[27] *Id*. ¶¶ 12–13.

[28] *Id*. ¶ 3.

[29] *Id*. ¶¶ 17–18.

[30] *Gomez v. Toledo*, 446 U.S. 635, 638–39 (1980) (citing *Owen v. City of Independence*, 445 U.S. 622, 651 (1980)).

damages liability under § 1983.[31]  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."[32]  To this end, qualified immunity shields government officials from liability for money damages unless the plaintiff shows that the official violated a federal statutory or constitutional right, and that the right the official violated was "clearly established" at the time of the challenged conduct.[33] Generally, for a right to be considered clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."[34]

Qualified immunity is a defense that must be pleaded by the defendant,[35] but once the defendant raises it, the burden is on the plaintiff to "(1) com[e] forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right and (2) demonstrat[e] that the right violated was clearly established at the time of the conduct at issue."[36] Unless the plaintiff provides specific, non-conclusory allegations of fact sufficient to establish

---

[31] *Id.* at 639.

[32] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

[33] *Id.* at 735 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Scott v. Hern*, 216 F.3d 897, 910 (10th Cir. 2000) (quoting *Greene v. Barrett*, 174 F.3d 1136, 1142 (10th Cir. 1999)).

[34] *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quoting *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010)).

[35] *See Gomez*, 446 U.S. at 640 (citing Fed. R. Civ. P. 8(c)).

[36] *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1250 (D. Kan. 2004) (citing *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998)); *see also Libretti v. Courtney*, 633 F. App'x 698, 699 (10th Cir. 2016).

these elements, the official is entitled to qualified immunity.[37]  Courts have discretion to decide

which of the two prongs of the qualified immunity analysis to address first.[38]

### 1.    Claim for Unreasonable Seizure Under the Fourth and Fourteenth Amendments

Plaintiff alleges that his arrest by Defendant constituted an unreasonable seizure under

the Fourth and Fourteenth Amendments,[39] and also that Defendant's conduct constituted an

unreasonable interference with and retaliation for expression of protected speech in violation of

the First and Fourteenth Amendments.[40]   Starting first with Plaintiff's claim for unreasonable

seizure, Tenth Circuit case law is settled that a warrantless arrest is not constitutionally valid

under the Fourth Amendment unless "an officer has probable cause to believe that the arrestee

committed a crime."[41]  Thus, in determining whether Defendant violated Plaintiff's Fourth

Amendment right, the Court must consider whether Defendant had probable cause to arrest

Plaintiff on July 1, 2015.  "'When a warrantless arrest is the subject of a § 1983 action, the

defendant is entitled to qualified immunity if a reasonable officer could have believed that

probable cause existed to arrest or detain the plaintiff.'"[42]

---

[37] *See al-Kidd*, 563 U.S. at 735.

[38] *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[39] The Fourth Amendment's guarantee that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized," is "enforceable against the States through the Fourteenth Amendment." *Camara v. Mun. Court of City and Cty. of San Francisco*, 387 U.S. 523, 528 (1967) (citing *Ker v. California*, 374 U.S. 23, 30 (1963)).

[40] The First Amendment is likewise made applicable to the states through the Fourteenth Amendment.  *See Schneider v. New Jersey*, 308 U.S. 147, 160 (1939).

[41] *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010) (citing *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000)).

[42] *Id.* (quoting *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008)).

> "Probable cause exists where the facts and circumstances within the officer['s] knowledge, and of which [he has] reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." This determination must be made "in light of the circumstances as they would have appeared to a prudent, cautious, trained police officer."[43]

When analyzing the events that led to Plaintiff's arrest for disorderly conduct, the Fourth and First Amendment issues in this case become inextricably intertwined because in order to find that Defendant had probable cause to arrest Plaintiff, the Court must also find that Plaintiff engaged in "fighting words," which constitute disorderly conduct per Kansas statute and which are not protected by the First Amendment.[44]  Defendant arrested Plaintiff for his loud use of obscene words and an obscene hand gesture.  Under Kansas law,

> (a) Disorderly conduct is one or more of the following acts that the person knows or should know will alarm, anger or disturb others or provoke an assault or other breach of the peace:
>
> (1) Brawling or fighting;
>
> (2) Disturbing an assembly, meeting or procession, not unlawful in its character; or
>
> (3) Using fighting words or engaging in noisy conduct tending reasonably to arouse alarm, anger or resentment in others.
> . . .

---

[43] *Berry v. City of Phillipsburg*, 796 F. Supp. 1400, 1405–06 (D. Kan. 1992) (quoting *United States v. Maher,* 919 F.2d 1482, 1485–86 (10th Cir.1990)).

[44] *See State v. Huffman*, 612 P.2d 630, 634, 636 (Kan. 1980) (citing *Chaplinksy v. New Hampshire*, 315 U.S. 568 (1942), and holding that K.S.A. § 21-4101—a predecessor to Kansas's current disorderly conduct statute—must be narrowly construed to apply only to "fighting words" within the meaning of fundamental First Amendment principles).  Kansas's current disorderly conduct statute, K.S.A. § 21-6203, has been in effect since 2011 and expressly states that it applies to "fighting words."

      (c) As used in this section, "fighting words" means words
            that by their very utterance inflict injury or tend to
            incite the listener to an immediate breach of the peace.[45]

This statute is construed narrowly, and requires more than words that are merely

"offensive or anger[] others."[46]  Rather, Kansas law requires "words that would provoke the

average person to retaliate under the circumstances."[47]  Similarly, First Amendment

jurisprudence defines "fighting words" as "those personally abusive epithets which, when

addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to

provoke a violent reaction."[48]  Although police officers can be victim to fighting words, the

"First Amendment protects a significant amount of verbal criticism and challenge directed at

police officers."[49]  "Thus, 'it is [not] objectively reasonable to arrest someone for . . . criticizing

the police,' and 'not every epithet directed at a police officer constitutes 'disorderly conduct.'"[50]

As another judge of this Court has explained,

> The fighting words doctrine has an even narrower
> application where, as here, an individual's speech offends a
> police officer.  This is because a properly trained police
> officer may reasonably be expected to exercise a higher
> degree of restraint than the average citizen, and thus be less
> likely to respond belligerently to fighting words.[51]

---

[45] K.S.A. § 21-6203(a), (c).

[46] *United States v. McKinney*, 9 F. App'x 887, 889 (10th Cir. 2001) (quoting *State v. Heiskell*, 666 P.2d 207, 211 (Kan. Ct. App. 1983)).

[47] *Id.*

[48] *McCormick v. City of Lawrence*, 325 F. Supp. 2d 1191, 1200 (D. Kan. 2004) (quoting *Cohen v. California*, 403 U.S. 15, 20 (1971)).

[49] *Houston v. Hill*, 482 U.S. 451, 461 (1987).

[50] *Stearns v. Clarkson*, 615 F.3d 1278, 1283 (10th Cir. 2010) (quoting *Elbrader v. Blevins*, 757 F. Supp. 1174, 1181, 1182 (D. Kan. 1991)).

[51] *McCormick v. City of Lawrence*, No. 02-2135-JWL, 2008 WL 1793143, at *18 (D. Kan. Apr. 18, 2008) (citing *Chaplinsky*, 315 U.S. at 571–72).

In *United States v. McKinney*, the Tenth Circuit reversed the conviction of a defendant for disorderly conduct, where the defendant had aggressively maneuvered her car toward a military police officer and then repeatedly told him to "go f*** himself" when asked to identify herself.[52]  The Tenth Circuit found that while "tasteless and undoubtedly offensive to many, [the defendant's] words would not provoke the average person to retaliate under the circumstances" because she did not threaten or offer to fight the officer.[53]  Rather, her words were "the R-rated equivalent of other commonly used phrases, such as 'buzz off,' 'go away,' 'leave me alone,' and get lost.'"[54]  Similarly, in *Stearns v. Clarkson*, the Tenth Circuit found no probable cause for the arrest of a man who, on the day previous to his arrest, had been "loud, belligerent, smelled of alcohol, and pointed his finger at [the officer] while using profanity."[55]  Specifically, the plaintiff in *Stearns* had referred to an officer as "probably the mother f***** that shot my dad."[56]  In analyzing the defendant's qualified immunity defense, the Tenth Circuit found that "at the time [the defendant] ordered the arrest . . . it was well-settled that profanity, especially toward police officers, does not amount to a violation of the disorderly conduct statute unless it constitutes 'fighting words.'"[57]  Where the plaintiff made no threat against the defendant, the defendant had no probable cause to arrest the plaintiff for disorderly conduct.[58]

---

[52] *McKinney*, 9 F. App'x at 889.

[53] *Id*.

[54] *Id*.

[55] *Stearns*, 615 F.3d at 1283.

[56] *Id*. at 1280.

[57] *Id*. at 1283.

[58] *Id*. at 1284.

The Court must consider the totality of the circumstances surrounding Plaintiff's conduct and remarks when analyzing whether Defendant had probable cause to arrest him for disorderly conduct.[59]  Plaintiff alleges that he directed obscene words and an obscene gesture toward his neighbor, who was not present, rather than toward Defendant, a trained police officer.  Although Plaintiff concedes that he was "loud" and in "close proximity" to Defendant when shouting toward his neighbor's house, there is no allegation that Plaintiff said more than "F*** that, mother*****," words very similar to those used in *McKinney* and *Stearns*.  While Plaintiff's behavior was certainly distasteful, the Court cannot find that Defendant could have reasonably believed—based on clearly established law at the time—that he had probable cause to arrest Plaintiff for disorderly conduct.  Defendant is therefore not entitled to qualified immunity from Plaintiff's claim for unreasonable seizure under the Fourth and Fourteenth Amendments.[60]

## 2.    First Amendment Retaliation Claim

---

[59] *McKinney*, 9 F. App'x at 888 (citing *State v. Beck*, 682 P.2d 137, 140 (Kan. Ct. App. 1984)).

[60] Defendant argues that he is entitled to qualified immunity because "although [Plaintiff's] conviction was later overturned, at minimum, the Municipal Court Judge felt there were facts sufficient to convict Plaintiff of 'disorderly conduct.'" Doc. 5 at 8.  Although not cited by Defendant, the Court acknowledges decisions of other judges of this Court finding that under Kansas law, "the conviction of the accused by a magistrate or trial court, although reversed by an appellate tribunal, conclusively establishes the existence of probable cause" for the purposes of qualified immunity.  *Elbrader v. Blevins*, 757 F. Supp. 1174, 1178 (D. Kan. 1991) (citing Restatement (Second) of Torts § 667(1) (1977)); *see also Mason v. Stock*, 955 F. Supp. 1293, 1307 (D. Kan. 1997).  The Court declines to follow these cases in light of precedent from the Supreme Court and the Tenth Circuit finding that a § 1983 suit challenging the validity of an arrest may proceed where "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ."  *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994); *see also Martinez v. City of Albuquerque*, 184 F.3d 1123, 1125–27 (10th Cir. 1999) (finding that federal § 1983 suit was barred to the extent it challenged the lawfulness of arrest and conviction where conviction was on appeal and had not been overturned); *Rogers v. Carter*, 133 F.3d 1114, 1117 (8th Cir. 1998) ("We . . . reject appellee's specious argument that the conviction of [appellant] in municipal court is a complete defense to [appellant's] Fourth Amendment unlawful arrest claim . . . [where] the initial 'conviction' was subsequently overturned upon a finding of innocence following a trial on the merits in a court of competent jurisdiction.") (internal citations omitted); *McCoy v. Meyers*, No. 12-3160-SAC, 2012 WL 4903366, at *3 (D. Kan. Oct. 16, 2012) ("[A] claim for damages is not cognizable under § 1983 where a judgment in plaintiff's favor would necessarily imply the invalidity of his conviction or sentence, unless the prisoner can show that the prior conviction had previously been invalidated.") (citing *Heck*, 512 U.S. at 486–87).  Allowing Plaintiff to proceed with his § 1983 claims in this case would not render a prior sentence or conviction invalid, as Plaintiff was ultimately found not guilty following a bench trial before the Cherokee County District Court.  *See* Doc. 2 ¶¶ 14–15.

For essentially the same reasons discussed above with respect to Plaintiff's unreasonable seizure claim, Defendant is not entitled to qualified immunity from Plaintiff's claim that Defendant retaliated against him for exercising his First Amendment right of free speech. Where the government defendant is not the plaintiff's employer, First Amendment retaliation claims are analyzed according to the standard set forth in *Worrell v. Henry*.[61] This standard requires proof of the following elements:

> (1) that the plaintiff "was engaged in constitutionally protected activity"; (2) that the defendant's actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) that the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."[62]

Under the qualified immunity framework discussed above, the Court must examine "first, whether plaintiff has established a constitutional violation under the three-part *Worrell* standard and, second, whether the law was clearly established such that a reasonable [officer] would have understood that what he or she was doing amounted to a violation of [Plaintiff's] constitutional rights."[63]

As to the first element of the *Worrell* test, the Court finds that Plaintiff's speech is protected by the First Amendment because it did not constitute fighting words. "As the Supreme Court observed in *Hill*, speech is often provocative and challenging, but it is nevertheless protected unless it is shown likely to produce a 'clear and present danger or a serious substantive

---

[61] *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000).

[62] *Id.* at 1212 (quoting *Lackey v. Cty. of Bernalillo*, No. 97-2265, 1999 WL 2461, at *3 (10th Cir. Jan. 5, 1999) (unpublished)).

[63] *McCormick*, 2008 WL 1793143, at *18.

evil that rises far above public inconvenience, annoyance, or unrest.'"[64]  Thus, fighting words are limited to "epithets (1) directed at the person of the hearer, (2) inherently likely to cause a violent reaction, and (3) playing no role in the expression of ideas."[65]  In fact, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."[66]  Although Defendant points to the case of *McCormick v. City of Lawrence* to support his argument that Plaintiff engaged in fighting words, that case is distinguishable because it involved a plaintiff who persistently goaded and personally insulted police officers while they were in the process of conducting investigations.[67]  Unlike the speech considered in *McCormick*, the speech at issue here does not rise to the level at which a reasonable officer would be provoked to a violent reaction.  This matter is more akin to a second case involving the same plaintiff as in *McCormick*, where Judge Lungstrum of this Court found material issues of fact precluding summary judgment on qualified immunity grounds where the plaintiff called the defendant officer a "cognitively impotent pig."[68]  Judge Lungstrum found it unlikely that the plaintiff's "chiding posed such a clear and present danger that it was inherently likely to produce a violent reaction from [the officer], whose professional duty is to uphold the peace."[69]

---

[64] *Id*. (quoting *Hill*, 315 U.S. at 461).

[65] *Id*. (citing *Burns v. Bd. of Cty. Comm'rs*, 330 F.3d 1275, 1285 (10th Cir. 2003)).

[66] *Id*. (quoting *Hill*, 315 U.S. at 462–63); *see also McKinney*, 9 F. App'x at 889 (noting that plaintiff "has a constitutional right to voice her objections to [an] officer's inquiries").

[67] *McCormick*, 325 F. Supp. 2d at 1196-99, 1201 (finding that plaintiff had engaged in "fighting words" where he repeatedly taunted officers while they were working on police matters unrelated to plaintiff, calling them, among other things, "f***ing pigs," "oppressive, sick a**holes," "jack-booted thugs," "Gestapo," and "pieces of sh*t.").

[68] *McCormick*, 2008 WL 1793143, at *19.

[69] *Id*.

Defendant also relies on the case of *Leverington v. City of Colorado Springs*,[70] in which the Tenth Circuit affirmed the district court's dismissal of the plaintiff's First Amendment retaliation claim against a city police officer on the basis of qualified immunity. In *Leverington*, the defendant officer stopped the plaintiff—a cardiac nurse—for speeding, and their interactions during the traffic stop became hostile. When the defendant gave the plaintiff a traffic citation, she told him that she hoped "she never had him as a patient."[71] The defendant reported the plaintiff's threat to her employer, and the plaintiff was fired from her job as a result.[72] The Tenth Circuit held that because it was "debatable whether a reasonable officer in [the defendant's] position would have considered [the plaintiff's] statement to be a threat" unprotected by the First Amendment, the plaintiff's free speech rights were not clearly established under the circumstances at issue and the defendant was entitled to qualified immunity.[73] In this case, Plaintiff's foul words and gesture directed toward his neighbor were not a threat of future bodily harm toward Defendant as in *Leverington*, nor were they the type of epithets that would inherently invoke a violent reaction in a trained police officer. The cases cited by Defendant do not convince the Court that Plaintiff's speech lacked First Amendment protection.

Regarding the second *Worrell* element, the Court finds that Defendant's alleged actions—injuring Plaintiff by forcefully grasping him and throwing him onto the street, and then arresting him—would be sufficient to chill a person of ordinary firmness from continuing to express protected speech. The Court also finds that the third *Worrell* element is met because

---

[70] 643 F.3d 719 (10th Cir. 2011).

[71] *Id*. at 722.

[72] *Id*.

[73] *Id*. at 733.

Defendant's actions were motivated by Plaintiff's exercise of his free speech rights, given that no time elapsed and no other conduct occurred between Plaintiff's words and gesture and Defendant throwing him onto the street. Plaintiff has established a constitutional violation with respect to his First Amendment retaliation claim. Finally, based on the precedent discussed above concerning the meaning of "fighting words," the Court finds that at the time in question, the law was clearly established such that Defendant should have known that his retaliatory actions would violate Plaintiff's rights.[74] Accordingly, Defendant is not entitled to qualified immunity from Plaintiff's First Amendment retaliation claim.

### 3.    Excessive Use of Force

Plaintiff alleges that Defendant used excessive force in arresting him in violation of the Fourth and Fourteenth Amendments.[75] In *Graham v. Connor*, the United States Supreme Court held that claims that a police officer has used excessive force in the course of an arrest must be analyzed under the Fourth Amendment's "objective reasonableness" standard.[76] Using that standard—and keeping in mind that "that police officers are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation"—the Court examines "whether the officer's actions [were] objectively reasonable in light of the facts and

---

[74] *See Hill*, 482 U.S. at 461–62; *McKinney*, 9 F. App'x at 889; *Stearns*, 615 F.3d at 1283; *McCormick*, 2008 WL 1793143, at *23.

[75] Under Tenth Circuit law, "in cases involving claims of both unlawful arrest and excessive force arising from a single encounter, it is necessary to consider both the justification the officers had for the arrest and the degree of force they used to effect it. If the plaintiff can prove that the officers lacked probable cause, he is entitled to damages for the unlawful arrest, which includes damages resulting from any force reasonably employed in effecting the arrest. If the plaintiff can prove that the officers used greater force than would have been reasonably necessary to effect a lawful arrest, he is entitled to damages resulting from that excessive force. These two inquiries are separate and independent, though the evidence may overlap. The plaintiff might succeed in proving the unlawful arrest claim, the excessive force claim, both, or neither." *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007).

[76] *Graham v. Connor*, 490 U.S. 386, 388, 394–95 (1989).

circumstances confronting [him], without regard to [his] underlying intent or motivation."[77]  This inquiry must be undertaken from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[78]  The Supreme Court has identified three factors to be examined by courts analyzing claims of excessive force during an arrest: (1) "the severity of the crime at issue," (2) "whether the suspect pose[d] an immediate threat to the safety of the officer[] or others; and (3) whether [the suspect was] actively resisting arrest or attempting to evade arrest by flight."[79]

In this case, Plaintiff alleges that he was arrested by Defendant for the misdemeanor offense of disorderly conduct after he made an obscene hand gesture and shouted obscenities toward his neighbor's house.  The first *Graham* factor favors Plaintiff, given that disorderly conduct is not a serious crime, but a Class C misdemeanor under Kansas law.[80]  The Court finds that the second *Graham* factor also favors Plaintiff—although Plaintiff concedes that he was "loud" and "in close proximity" to Defendant, he alleges that his words and gestures were not directed toward Defendant, but toward his neighbor.[81]  There is no allegation that Plaintiff verbally or physically threatened Defendant.  Finally, the third *Graham* factor favors Plaintiff, who alleges that in response to his obscene words and gestures, Defendant "with no prior warning to Plaintiff, forcefully grasped Plaintiff and threw him onto the street.  Plaintiff offered

---

[77] *Id.* at 397.

[78] *Id.* at 396.

[79] *Id.*

[80] K.S.A. § 21-6203(b).

[81] Doc. 2 ¶ 11.

no resistance to Defendant Qualls' seizure."[82]  Thus, taking Plaintiff's allegations as true, Plaintiff was neither actively resisting arrest nor was he attempting to flee.  In fact, Plaintiff had no warning prior to being thrown to the ground.  Analyzing the circumstances of this case according to the framework of the *Graham* factors, the Court finds that Plaintiff has alleged facts sufficient to establish a violation of his Fourth and Fourteenth Amendment right against the use of unreasonable force during arrest.

Having found that Plaintiff has sufficiently alleged a violation of his right to be free from the use of excessive force, the Court must next examine whether that right was clearly established under existing case law at the time in question, meaning that Defendant's conduct violated Plaintiff's right under circumstances where "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[83]  In determining whether Plaintiff's right was clearly established at the time in question, "a factually identical case is not required, but 'it must still be apparent to a reasonable officer in light of pre-existing law that his conduct was unlawful.'"[84]  As the Tenth Circuit has explained,

> Although the general factors outlined in *Graham* are insufficiently specific to render every novel use of force unreasonable, "[w]e cannot find qualified immunity wherever we have a new fact pattern."  Thus, our circuit uses a sliding scale to determine when law is clearly established.  Under this approach, "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to establish

---

[82] *Id*. ¶ 12.

[83] *Saucier v. Katz,* 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 235–37 (2009).

[84] *White v. Martin*, 425 F. App'x 736, 744 (10th Cir. 2011) (quoting *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010)); *see also Cavanaugh v. Woods Cross City*, 625 F.3d 661, 666 (10th Cir. 2010) (noting that "the qualified immunity analysis involves more than 'a scavenger hunt for prior cases with precisely the same facts.' In certain circumstances, law can be 'clearly established' even 'without a body of relevant case law,' and 'even in novel factual circumstances.'") (internal citations omitted).

> the violation." Relevant here, "*Graham* establishes that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest."[85]

Although there does not appear to be a factually identical case from the Tenth Circuit, there are Tenth Circuit cases finding that an officer's use of force was justified based on factors that are *not* present here, such as a warning to the plaintiff that he was under arrest,[86] the plaintiff actively resisting arrest,[87] the plaintiff threatening the officer with physical assault,[88] and the officer using only a mild amount of force to accomplish the arrest.[89] The facts here are in some respects similar to the case of *Cavanaugh v. Woods Cross City*, in which the Tenth Circuit affirmed the district court's denial of the defendant's motion for summary judgment on the § 1983 plaintiff's claim for excessive use of force.[90] In that case, officers responded to a non-emergency call from a man seeking help finding his wife, who had stormed out of their home following a domestic dispute. Although the husband informed police that his wife had left home with a kitchen knife, she was, in fact, unarmed. As one officer observed the woman walking back toward the house, he began to follow her. When she veered away from him, the officer discharged his taser into her back, causing her to fall and strike her head.[91] The Tenth Circuit affirmed the district court's denial of summary judgment, finding that the officer's use of force

---

[85] *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008) (quoting *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284–85 (10th Cir. 2007)) (internal citations omitted).

[86] *Hinton v. City of Elwood*, 997 F.2d 774, 781–82 (10th Cir. 1993).

[87] *Id.*

[88] *Cruz v. Gutierrez*, Nos. 99-2358, 99-2364, 2000 WL 1786743, at *4 (10th Cir. 2000) (unpublished).

[89] *Bryner v. Utah*, 429 F. App'x 739, 745–47 (10th Cir. 2011) (unpublished).

[90] *Cavanaugh*, 625 F.3d at 665–66.

[91] *Id.* at 662–63.

was not objectively reasonable.[92]  Although the use of a taser is almost certainly more extreme

than the use of bodily force at issue here (*i.e.*, forcefully grasping Plaintiff and throwing him

onto the ground), both can be said to "'seize' the victim in an abrupt and violent manner."[93]

Further, the Tenth Circuit noted that like Plaintiff in this case, the plaintiff in *Cavanaugh* was not

actively fleeing or resisting arrest and, in fact, had no reason to suspect that she was under arrest

and no chance to comply with the officer's demands.[94]  The court noted that "[t]he absence of

any warning—or of facts making clear that no warning was necessary—makes the circumstances

of this case especially troubling."[95]

Likewise, Plaintiff in this case was unarmed, made no attempt to flee or resist arrest, and

had no verbal warning that he was being arrested and no chance to comply before Defendant

grabbed him and threw him to the ground.  The Court finds that under these circumstances, the

"nature and quality of the intrusion into the interests of [Plaintiff] protected by the Fourth

Amendment was quite severe."[96]  Plaintiff's right to be free from aggressive physical force

without a prior warning and when not resisting arrest was settled at the time in question and

Defendant's use of force was objectively unreasonable under clearly established law.[97]  Plaintiff

---

[92] *Id*. at 666.

[93] *Id*. at 665.

[94] *Id*.

[95] *Id*. at 665 (quoting *Casey*, 509 Fd.3d at 1285).

[96] *Id*. (internal quotation marks omitted).

[97] Cases from other courts support a finding that Defendant should have known that his conduct was unlawful based on established law at the time.  *See, e.g., Brown v. Lewis*, 779 F.3d 401, 419 (6th Cir. 2015) (finding that "pulling compliant detainee out of car and throwing her to ground in process of handcuffing her is clearly established excessive force"); *Small v. McCrystal*, 708 F.3d 997, 1005–06 (8th Cir. 2013) (finding officer was not entitled to summary judgment based on qualified immunity where he had not advised plaintiff that he was under arrest, plaintiff did not resist arrest, and officer tackled plaintiff from behind without prior warning); *Johnson v. Carroll*, 658 F.3d 819, 827 (8th Circuit 2011) (finding material issue of fact precluding summary judgment in favor of officers on qualified immunity grounds where officers threw the plaintiff to the ground without warning, then

has alleged sufficient facts to survive Defendant's motion to dismiss with respect to excessive use of force.

### B.     State-Law Claims

The Court finds that it has supplemental jurisdiction to hear Plaintiff's state-law constitutional claims, which arise from the same nucleus of fact as—and are parallel to—his federal constitutional claims.  All of Plaintiff's claims arise out of the same incident on July 1, 2015, during which Defendant allegedly violated Plaintiff's rights to free speech and to be free from unreasonable seizure.  Having exercised its discretion to hear these state-law claims, however, the Court finds that they must be dismissed under Rule 12(b)(6) because Plaintiff's Complaint sets forth no "plausible [state-law] claim . . . to survive a motion to dismiss."[98]  Further, Plaintiff's Motion to Amend his Complaint is denied as futile for the reasons set forth below.

Plaintiff alleges that Defendant violated his right to free speech and his right to be free from unreasonable seizure under Sections 11 and 15 of the Kansas Bill of Rights, respectively, and that these "causes of action are authorized and his damages compensable . . . under state law by the Kansas Tort Claims Act, K.S.A. 75-6101, et seq."[99]  Plaintiff cites no particular provision of the KTCA as the source of his claims, and seeks monetary damages rather than injunctive or declaratory relief.  While § 1983 is a federal statute expressly authorizing a private right of

---

used mace, when she repeatedly interfered with their attempt to arrest her nephew but made no physical threat toward officers); *Bauer v. Norris*, 713 F.2d 408, 412–13 (8th Cir. 1983) (finding even minor use of force supported jury verdict of excessive use of force where plaintiffs were arrested for misdemeanor crime of disorderly conduct and did not resist arrest or threaten officer, even where one plaintiff was "argumentative, vituperative, and threatened legal action" because "such verbal abuse alone does not justify the use of any force.").

[98] *Morman v. Campbell Cty. Mem'l Hosp.*, 632 F. App'x 927, 932 (10th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (unpublished)).

[99] Doc. 2 ¶ 5.

action for state deprivations of federal rights, "an alleged violation of a state constitution cannot

form the basis of a § 1983 claim. That section provides remedies only for deprivation of rights

secured by the United States Constitution."[100] Plaintiff's state-law causes of action are not

cognizable because Kansas law does not permit a claim for monetary damages brought directly

under the Kansas Constitution.[101] Plaintiff has not identified any Kansas statute analogous to §

1983 that would allow a damages action for the violation of the State's constitution, nor has he

established that Kansas would permit the equivalent of a *Bivens* suit, which is an action for

damages in federal court permitted directly under the Fourth Amendment without a federal

authorizing statute.[102, 103]

---

[100] *Jackson v. City of Overland Park*, No. 11-2527-CM-DJW, 2012 WL 1231848, at *6 (D. Kan. Apr. 11, 2012).

[101] *Prager v. Kan. Dept. of Revenue*, 20 P.3d 39, 64 (Kan. 2001) ("[Plaintiff] has failed to cite any Kansas case permitting a private person or entity to be found liable for money damages for interfering with someone's right of free speech under either the United States or Kansas Constitutions. In those cases where the issue has arisen, Kansas has so far rejected *Bivens*-type actions . . . for damages based directly under the Constitution without implementing legislation.") (citing *Goldbarth v. Kan. State Bd. of Regents*, 9 P.3d 1251 (Kan. 2000); *Gross v. Capital Elec. Line Builders, Inc*., 861 P.2d 1326 (Kan. 1993); *Sharp v. State* 783 P.2d 343 (Kan. 1989), *cert denied* 498 U.S. 822 (1990)).

[102] *Id.*; *Brooks v. Sauceda*, 85 F. Supp. 2d 1115, 1128 (D. Kan. 2000) ("Plaintiff provides no authority . . . that Kansas would allow plaintiff to bring a state-based analogy to a *Bivens* suit, *i.e.*, a claim for monetary damages brought directly under the Kansas Constitution.") (citing *Sharp v. State*, 783 P.2d at 347; *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)).

[103] The rule is the same in many other states. *See, e.g., McMillion-Tolliver v. Kowalski*, Civil Action No. 2:13-cv-29533, 2014 WL 1329790, at *2 (S.D.W.V. Apr. 1, 2014) (finding that "[w]ithout an independent statute authorizing money damages for violations of the West Virginia Constitution, the plaintiff's claims must fail."); *Corbett v. Transp. Sec. Admin*., 968 F. Supp. 2d 1171, 1191 (S.D. Fla. 2012) (stating that in Florida, there is no cause of action for money damages for violation of a state constitutional right); *Kitko v. Young*, Civil Action No. 3:10-189, 2012 WL 399981, at *6 (W.D. Pa. Feb. 7, 2012) (noting that "neither federal courts nor Pennsylvania state courts have recognized a cause of action for monetary damages for violations of the Pennsylvania Constitution"); *Mata-Cuellar v. Tenn. Dept. of Safety*, No. 3:10-0619, 2010 WL 3122635, at *2 (M.D. Tenn. Aug. 6, 2010) ("It is well settled that there is no viable cause of action for money damages for violations of the Tennessee Constitution."); *Bradford v. Bracken Cty*., Civil Action No. 09-115-DLB, 2010 WL 11520681, at *5 (E.D. Ky. Feb. 1, 2010) ("[A]bsent some directive from the legislature or the Kentucky Supreme Court, this Court is not at liberty to create a cause of action where one does not exist. There exists no statute under which private litigants are authorized to pursue a cause of action against government officials for the violation of their rights under the Kentucky Constitution, and there is not a Kentucky decision expressly holding that such a right exists."); *Fowler v. U.S. Bank Nat'l Ass'n*, No. C07-5589RBL, 2007 WL 4562900, at *2 (W.D. Wash. Dec. 20, 2007) (noting that Washington courts have rejected invitations to establish a cause of action for damages based upon violations of

Plaintiff cites three cases from the Supreme Court of Kansas—one from 1917 and two from 1974—to support his contention that he "has a remedy for an unreasonable seizure under the state constitution."[104]  Plaintiff does not, however, meaningfully explain how these cases support a claim for monetary damages arising directly under the Kansas Bill of Rights.  Plaintiff first cites the 100-year-old case of *State v. Wilson*,[105] in which a retail agent appealed his conviction for violating a state statute that forbid the provision of "trading stamps" (*i.e.*, coupons redeemable in cash or merchandise) to customers without the payment of a license fee.  Wilson claimed that his conviction was invalid because the statute violated the Kansas Constitution's due process and equal protection provisions.[106]  The Supreme Court of Kansas found that the statute did not violate the Kansas Constitution, and that the state legislature had the power to require the payment of a license fee when permitting a practice that could be injurious to the public.[107]  Plaintiff does not explain how this case supports his claim for monetary damages under the Kansas Bill or Rights other than to say that the court "found an enforceable right to suppression of evidence under the state constitution."[108]  The Court does not read *State v. Wilson* to say what Plaintiff claims, but even if the case was as Plaintiff describes, it still would not support his legal theory here.

---

state constitution in the absence of legislation permitting such actions); *but see Faulks v. City of Hartford*, Civil Action No. 3:08-cv-270 (VLB), 2010 WL 259076, at *8–9 (D. Conn. Jan. 19, 2010) (recognizing that while the Connecticut Supreme Court is reluctant to create causes of action for money damages under the Connecticut Constitution, whether to allow a *Bivens*-type suit for violation of the state constitution is determined on a case-by-case basis based on the constitutional provision at issue and the nature of the alleged unconstitutional conduct) (citing *Binette v. Sabo*, 710 A.2d 688 (1998)).

[104] Doc. 10 at 10.

[105] 168 P. 679 (Kan. 1917).

[106] *Id*. at 680, 682.

[107] *Id*. at 682–84.

[108] Doc. 10 at 10.

Similarly, the cases of *Manzanares v. Bell*[109] and *Henry v. Bauder*[110] do not support Plaintiff's argument. In both of those cases, the Supreme Court of Kansas examined the constitutionality—under the United States and Kansas Constitutions—of state statutes relating to automobile insurance coverage and liability, rather than the viability of a claim for money damages arising directly under the Kansas Constitution. In *Manzanares*, the court considered and rejected due process and equal protection challenges to Kansas's no-fault automobile insurance act.[111] In *Henry*, the Supreme Court of Kansas found that the Kansas automobile guest statute was unconstitutional and void on equal protection grounds.[112] Neither of these cases supports Plaintiff's contention that Kansas permits claims for monetary damages brought directly under the Kansas Constitution.

Plaintiff also points to K.S.A. § 21-5227 (formerly K.S.A. § 21-3215(1)) to support his state-law constitutional claims. In relevant part, this statute provides that an officer is "justified in the use of any force which such officer reasonably believes to be necessary to effect the arrest and the use of any force which such officer reasonably believes to be necessary to defend the officer's self or another from bodily harm while making the arrest."[113] The Supreme Court of Kansas has explained:

> As we view [this statute], it follows the majority rule concerning arrests of misdemeanants. It allows a law enforcement officer to use any force he or she believes necessary to effect an arrest, but prohibits the use of force which is likely to cause death or great bodily harm except to

---

[109] 522 P.2d 1291 (Kan. 1974).

[110] 518 P.2d 362 (Kan. 1974).

[111] *Manzanares*, 522 P.2d at 1295.

[112] *Henry*, 518 P.2d at 363.

[113] K.S.A. § 21-5227(a).

> prevent death or great bodily harm to the officer or another person. . . .  The purpose of the statute is to set limits for law enforcement officers, and if the limits are observed an officer has a defense in a criminal action.  We see no reason why the civil liability of a law enforcement officer should not be coextensive with his or her criminal liability.[114]

Thus, while K.S.A. § 21-5227 guides the determination of an officer's criminal or civil liability for use of force, cases in which this statute is invoked deal with state-law tort claims such as false imprisonment, assault, battery, negligence, and wrongful death.[115]  Plaintiff has not cited, and the Court has not found, any case in which K.S.A. § 21-5227 has been held to authorize a claim for monetary damages brought directly under the Kansas Bill of Rights.

Plaintiff's attempt to bring such claims under the umbrella of the KTCA is likewise unavailing.  Although Plaintiff broadly asserts that he brings his state-law constitutional claims pursuant to the KTCA, "[t]he KTCA creates no new cause of action beyond what is already available under Kansas law, and there can be no greater liability under the KTCA than a private person would have under Kansas law."[116]  Rather than creating new causes of action, the KTCA was enacted "to transform the approach to governmental liability by waiving the sovereign immunity of the state and imposing on governmental entities within the state liability for the torts of their employees in the same manner as a private employer."[117]  As the Kansas Supreme Court

---

[114] *Dauffenbach v. City of Wichita*, 667 P.2d 380, 387 (Kan. 1983).

[115] *See, e.g.*, *Simpson v. Kansas*, 593 F. App'x 790, 798 (10th Cir. 2014) (false imprisonment claim under KTCA); *Fry ex rel. Estate of Fry v. City of Galena,* 450 F. Supp. 2d 1236, 1246 (D. Kan. 2006) (wrongful death claim premised on either battery or negligence under Kansas law); *Sudac v. Hoang*, 378 F. Supp. 2d 1298, 1311 (D. Kan. 2005) (wrongful death claim based on alleged negligent, wanton, or willful use of force); *Berry v. City of Phillipsburg*, 796 F. Supp. 1400, 1408–09 (D. Kan. 1992) (assault and battery).

[116] *Prager v. Kan. Dept. of Revenue*, 20 P.3d 39, 62 (Kan. 2001) (citing K.S.A. § 75-6103; McAllister & Robinson, The Potential Civil Liability of Law Enforcement Officers and Agencies, 67 J.K.B.A. 14, 16 (Sept. 1998)).

[117] William E. Westerbeke, The Immunity Provisions in the Kansas Tort Claims Act: The First Twenty-Five Years, 52 U. Kan. L. Rev. 939, 944 (2004).

has explained when analyzing damages claims for alleged violations of free speech rights

asserted under the United States and Kansas Constitutions:

> [T]he KTCA provided only for liability where the governmental entity, if a private person, would be liable under the laws of this state. **Because there is no statutory or common-law cause of action in Kansas by which a private person may be liable for damages for deprivation of a person's constitutional rights, neither the [State nor the State's employee] could be liable for [the plaintiff's] claims under the KTCA.**[118]

Thus, the Kansas Legislature did not create a cause of action for a "constitutional tort" in

enacting the KTCA,[119] and Plaintiff fails to state a claim for monetary damages either directly

under the Kansas Constitution or under the KTCA.

### C.    Motion to Amend

Because Plaintiff's state-law causes of action are dismissed for failure to state a claim, his

Motion to Amend must be denied as futile.  Defendant argues that this Court lacks subject matter

jurisdiction to hear Plaintiff's state-law claims because Plaintiff has failed to allege compliance

with K.S.A. § 12-105b(d), which provides that "[a]ny person having a claim against a

municipality or against an employee of a municipality which could give rise to an action brought

under the Kansas tort claims act shall file a written notice as provided in this subsection before

commencing such action. . . ."  Although Plaintiff argues in his opposition to Defendant's motion

to dismiss that such notice is not required where the party sued is a municipal employee rather

than the municipality itself, he nonetheless seeks leave to amend his Complaint by adding the

allegation that "[p]ursuant to K.S.A. § 12-105b the City of Baxter Springs, Kansas was served a

---

[118] *Prager*, 20 P.3d at 61 (emphasis added).

[119] *Id*. at 62.

notice of this claim on or about January 28, 2016."[120]   Defendant contends that Plaintiff's motion to amend should be denied as futile because Plaintiff's amended complaint would allege only that he provided notice of claims against the City of Baxter Springs, rather than against Defendant Qualls, and that his state-law claims would still be subject to dismissal for lack of jurisdiction due to Plaintiff's failure to provide the required statutory notice.

The Court agrees with Defendant that compliance with K.S.A. § 12-105b(d) "is required before a court has subject matter jurisdiction over a tort claim against a municipality."[121]   The Court also agrees with Defendant that § 12-105b(d) expressly requires notice as to claims against municipalities *or* their employees.[122]   The Court need not address whether Plaintiff's notice of claim was sufficient to meet the requirements of § 12-105b(d), however, because Plaintiff has not asserted viable state-law claims.  Plaintiff's proposed amendment to his Complaint would therefore be futile, and Plaintiff's Motion to Amend is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 4) is **denied** as to Plaintiff's federal claims arising under 42 U.S.C. § 1983, but **granted** as to Plaintiff's state-law claims purportedly arising under Sections 11 and 15 of the Kansas Bill of Rights and the Kansas Tort Claims Act.  Plaintiff's Motion to Amend Complaint (Doc. 12) is **denied** as futile.

**IT IS SO ORDERED.**

---

[120] Doc. 12 at 4.

[121] *Whaley v. Sharp*, 343 P.3d 63, 67 (Kan. 2014) (citation omitted).

[122] *See Doe v. U.S.D. No. 237 Smith Ctr. Sch. Dist.*, Case No. 16-CV-2801-JWL-TJJ, 2017 WL 3839416, at *5 (D. Kan. Sept. 1, 2017) (noting 2015 amendment of § 12-105b(d) to expressly require notice of claims against a municipality or an employee of a municipality) (citations omitted).

Dated: April 6, 2018

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE